PEARSON, MJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD M. CREATORE, | ) | CASE NO. 4:09-CV-2926 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | BENITA Y. PEARSON |
| | ) | |
| GIRTON, OAKES & BURGER, INC., | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendant. | ) | **AND ORDER** |

Before the Court is Defendant Girton, Oakes & Burger, Inc.'s ("GO&B") Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (**ECF No. 7**).[1] At issue is whether Plaintiff Ronald M. Creatore's causes of action fail to state claims upon which relief can be granted.

For the reasons provided below, the Court grants Girton, Oakes & Burger Inc.'s Motion

---

[1] On December 17, 2009, the matter was assigned to District Judge David D. Dowd. On December 21, 2010, Judge Dowd referred the matter to Magistrate Judge Benita Y. Pearson for general pretrial supervision. **ECF No. 3**. On June 6, 2010, "for the convenience of the court and the magistrate judge," Judge Dowd terminated the referral to the undersigned Magistrate Judge. **ECF No. 13**. On July 21, 2010, pursuant to **28 U.S.C. § 636(c)**, **Fed.R.Civ.P. 73**, and the consent of the parties, Judge Dowd referred the matter back to the undersigned Magistrate Judge for all further proceedings and the entry of judgement. **ECF Nos. 18** & **20**.

04:09-CV-2926

to Dismiss (**ECF No. 7**).

## I.  Factual[2] and Procedural Background

In 2000, Ronald Creatore ("Creatore"), David Barnitt ("Barnitt"), and William Sayavich ("Sayavich") formed U.S. Sanitary Corporation ("USSC") as a holding company to purchase the stock of GO&B.  **ECF No. 7 at 2**.  USSC's purchase was financed by Provident Bank ("Provident").  **ECF No. 7 at 2**.  Each partner was responsible for $725,000 of the loan.  **ECF No. 7 at 2**.  Creatore was President, Barnitt was Chief Financial Officer, and Sayavich was responsible for sales and marketing.  **ECF No. 7 at 2**.

As President of GO&B, Creatore claims that in response to Provident's "financial malfeasance" and other "economic factors," he "was forced to" purchase GO&B's secured loan on April 23, 2003, through PHN, Inc., "an Ohio corporation that Creatore formed and solely owned for the purposes of holding the Provident loans."  **ECF No. 1 at 2**.  Several hours after Creatore purchased the Provident loan, Alfa Laval and two other GO&B creditors filed an involuntary Chapter 7 bankruptcy petition against GO&B.[3]  **ECF No. 1 at 2**.  On May 1, 2003, Mark Beatrice ("Beatrice") was appointed Gap Interim Trustee for the bankruptcy and, as a result, Creatore no longer held operational control of GO&B.  **ECF No. 1 at 2**.  Later, Beatrice was appointed permanent Trustee for the bankruptcy.  **ECF No. 1 at 2**.

---

[2]  Disputed facts are presented in the light most favorable to Creatore.  *Bell Atl. Corp. v. Twombly*, **550 U.S. 544, 555 (2007)**

[3]  At the time Creatore filed his complaint, the bankruptcy matter was pending in Bankruptcy Court in the Northern District of Ohio.  *See In Re Girton, Oakes & Burger, Inc*. Case No. 03-41957).  **ECF No. 1 at 2**.  The bankruptcy matter ended in March 18, 2010.  **Bankruptcy ECF No. 304**.

04:09-CV-2926

On May 26, 2003, Susan Gray, a GO&B employee, sent an email message to Beatrice that Creatore alleges falsely accused him of the following:

> (1) engaging in a strategy to drive GO&B out of business; (2) [] wrongfully manipulating his position as the holder of GO&B's secured debt through PHN, Inc. to drive GO&B out of business; (3) [] engaging in wrongful self-dealing; (4) [] pilfering funds from GO&B to set up and fund a competing company; (5) [] wrongfully interfering with the employment of GO&B employees; (5) 'planning and scheming' against GO&B with 'evil intentions'; [and] (6) among other false accusations of wrongdoing (collectively, 'False Statements').

**ECF No. 1 at 3 (*citing* Exhibit A, ECF No. 1-1)**.

Three days after Beatrice received the email, Beatrice and Alfa Laval filed an adversary action against Creatore accusing him of engaging in misconduct such as "engaging in a 'bust out' scheme, [] using GO&B's assets for his own personal gain, [and] fraudulently transferr[ing] GO&B assets."  **ECF No. 1 at 3**.  Beatrice, on behalf of GO&B, and Creatore settled the adversarial complaint.  Creatore avers, however, that he suffered "considerable harm" due to the alleged defamatory email and resulting adversary proceeding.  **ECF No. 1 at 3**.

Around the time the email was sent to Beatrice, GO&B had an insurance policy through Assurance Company of America in the amount of one million dollars per occurrence and another one million dollars of umbrella coverage.  **ECF No. 1 at 3**.  Pursuant to the **Ohio Revised Code ("O.R.C.") § 2712.02**, Creatore cannot commence an action against the insurer until after liability has been established against the tortfeasor.  **ECF No. 1 at 3**.  Upon establishing GO&B's liability, Creatore seeks to recover under GO&B's insurance policy.  **ECF No. 1 at 4**.

Against that backdrop, on November 13, 2009, Creatore moved for relief from the Bankruptcy Court's stay in order to pursue the instant matter.  **ECF No. 7 at 3**.  On December

04:09-CV-2926

15, 2009, the Bankruptcy Court lifted the stay for Creatore's limited purpose. **ECF No. 1 at 4**.

On December 17, 2009, Creatore filed a complaint in this Court claiming jurisdiction based upon diversity of citizenship. **ECF No. 1 at 1-2**. The complaint alleges that (1) a GO&B employee sent an email to Beatrice that contained false and defamatory statements regarding Creatore; (2) these statements were at least negligent and are defamatory *per se* or alternatively *per quod*; and (3) GO&B "acted in reckless disregard" when its employee sent an email to Beatrice that "gave publicity to . . . false allegations" and "placed him before the public in a false light . . . that is highly offensive to a reasonable person." **ECF No. 1 at 4-5**.

Creatore further claims that as direct and proximate cause of GO&B's defamation and invasion of privacy, he has been damaged in an amount in excess of $75,000. **ECF No. 1at 4-5**. Specifically, the email harmed and damaged his business reputation and his interests suffered actual monetary damages. **ECF No. 8 at 2**. Creatore requests that the Court award a judgment against GO&B in excess of $75,000 plus interest, court costs, and any other relief the Court deems just and equitable. **ECF No. 1 at 5**.

On February 15, 2010, Defendant GO&B moved to dismiss the complaint because Creatore had failed to state a claim upon which relief could be granted pursuant to Rule 12(b)(6). GO&B summarized that Creatore " merely asserted generalized, conclusory allegations in this matter that should properly subject his lawsuit to dismissal." **ECF No. 7 at 11-12**. Specifically, GO&B asserted that Creatore's complaint is barred by the applicable one year statute of limitations set forth in **O.R.C. § 2305.11(a)** because the email from Susan Gray was sent May 26, 2003, and the instant action was filed over six years later on December 17, 2009. **ECF No.**

04:09-CV-2926

**7**.  GO&B also argues that Bankruptcy Code's automatic stay and extension provisions do not apply to Creatore's claims.  **ECF No. 7**.

On March 16, 2010, Creatore opposed the motion to dismiss.  In his opposition, Creatore claims that Bankruptcy Judge Woods' order for relief on Creatore's motion for relief from stay is *res judicata* on the instant objection to the stay.  **ECF No. 8 at 6**.  Creatore believes that he is entitled to the automatic stay protection found in **11 U.S.C. § 362(a)** because his claims should be considered pre-petition litigation and **11 U.S.C. § 362(c)** entitles him to a stay.  **ECF No. 8 at 7-13**.  Creatore further asserts that **11 U.S.C. § 108(c)** extends the time period to file his claims after the stay is lifted.  **ECF No. 8 at 13**.  Creatore continues to argue that equitable estoppel prohibits GO&B from asserting a statute of limitations defense because Beatrice withheld the alleged defamatory email instead of producing the document pursuant to a subpoena from another matter issued on March 17, 2004.  **ECF No. 8-1 Exhibit C**.  Therefore, Creatore contends that Beatrice's concealment hindered Creatore's ability to timely pursue his claims against GO&B.  **ECF No. 8 at 5-6**.

In its reply, GO&B argues that *res judicata* does not apply to this matter because the parties and causes of action are not identical.  **ECF No. 10 at 1-6**.  GO&B also asserts that Creatore's claims are not entitled to an automatic stay under **11 U.S.C. § 362(a)** or **11 U.S.C. § 362(c)**.  **ECF No. 8 at 7-14**.  Finally, GO&B notes that regardless of when Creatore discovered the actual defamatory statements, according to **O.R.C. § 2305.11(a)** the cause of action for defamation accrues upon the date of publication or when the words are spoken.  **ECF No. 10 at 15**.

04:09-CV-2926

With leave of Court, Creatore filed a sur-reply insisting that *res judicata* applies because the parties and causes of action are essentially the same. **ECF No. 12 at 2-4**. Creatore also reiterated arguments from his opposition and offers rebuttal to several of GO&B's arguments. **ECF No. 12 at 7**. Finally**,** Creatore urged that GO&B is confusing equitable estoppel with the discovery rule. **ECF No. 12 at 7-8**.

## II. Legal Standard

According to *Bell Atl. Corp. v. Twombly*, to survive a Rule 12 motion to dismiss for failure to state a claim, "'grounds' of [plaintiff's] 'entitle[ment] to relief,' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."[4] ***Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)**; *see also* ***Ashcroft v. Iqbal, et al.*, 129 S.Ct. 1937, 1950 (2009)**; **Fed.R.Civ.P. 12(b)(6)**. While dismissal for failure to state a claim upon which relief may be granted *does not* require appearance, beyond a doubt, that plaintiff can prove no set of facts in support of claim that would entitle him to relief, abrogating ***Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80;** "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." ***Twombly,* 550 U.S. at 555** (internal citation omitted); *see **Assoc. of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007)** (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of ***Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)**").

---

[4] In ***Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1953 (2009)**, the Supreme Court made it clear that "[o]ur decision in *Twombly* expounded the pleading standard for 'all civil actions,' and it applies to antitrust and discrimination suits alike."

04:09-CV-2926

*Iqbal* made clear that *Twombly* was based upon "[t]wo working principles." *Iqbal*, 129 U.S. at 1949. First, "[a]lthough for the purposes of a motion to dismiss [courts] must take all of the factual allegations in the complaint as true, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 129 U.S. at 1949-50 (*citing Twombly*, 550 U.S. at 555). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 U.S. at 1950 (internal citations omitted). Per *Twombly*, claims set forth in a complaint must be plausible, rather than conceivable. *Twombly*, 550 U.S. at 570. "[W]here well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Iqbal,* 129 U.S. at 1950 (*citing* Fed.R.Civ.P. 8(a)(2)). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

### III. Law and Analysis

**A. An Order for Relief Does Not Operate as *Res Judicata***

When determining whether a subsequent action is barred by the doctrine of *res judicata*, courts apply the following four elements:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies;[5] (3) an issue in the

---

[5] For purposes of *res judicata*, "a person is in privity with another if he is so identified in interest with such person that he represents the same legal right." *In re Fordu*, 201 F.3d 693,

04:09-CV-2926

>subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of causes of action.

*Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006) (*citing Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995)). In order to establish *res judicata*, all four elements must be satisfied. *Bloedow v. CSX Transp., Inc.*, 638 F.Supp.2d 831, 835 (N.D. Ohio 2009).

In the instant matter, Creatore asserts that the Bankruptcy Court's Order for Relief from Stay bars GO&B's Motion to Dismiss because the instant motion to dismiss "collaterally attack[s]" the applicability of the automatic stay to Creatore's claims. **ECF Nos. 7 at 14**; **8 at 5**. In support of that argument, Creatore contends that all four elements of *res judicata* have been met. **ECF. No. 8 at 5-7**. In response, GO&B alleges that *res judicata* does not apply because the second and fourth elements have not been satisfied. **ECF No. 10 at 3-6**.

The undersigned agrees that Creatore has not met the elements establishing *res judicata*, but for different reasons than those offered by GO&B.[6] A Bankruptcy Court's Order for Relief from Stay does not satisfy the first element's standard of finality, *i.e.*, a decision "which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Kusens

---

705 (6th Cir. 1999)*. "Trustees do not represent the debtor nor do they owe the debtor any fiduciary obligation." *In re Bashour*, 124 B.R. 52, 53 (Bankr. N.D. Ohio 1991). Trustees represent "'the interest of all creditors of the Debtor's bankruptcy estate, and is therefore not generally considered to be in privity with the debtor.'" *XL Sports, Ltd. v. Lawler*, 49 Fed. Appx. 13, 22 (6th Cir. 2002) (*citing In re Fordu*, 201 F.3d at 705-06).

[6] Without deciding whether GO&B is correct in arguing that Creatore does not meet the second and fourth elements, the Court rejects Creatore's *res judicata* defense because it fails to meet even the first element.

-8-

04:09-CV-2926

*v. Pascal Co.*, 448 F.3d 349, 356 (6th Cir. 2006) (*quoting Catlin v. United States*, 324 U.S. 229, 233 (1945)).  "A bankruptcy order is not final unless it "(1) resolves and seriously affects substantive rights and (2) finally determines the discrete issue to which it is addressed." *In re LWD, Inc.*, 335 Fed.Appx. 523, 527 (6th Cir. 2009) (*citing Mason v. Integrity Ins. Co.*, 709 F.2d 1313, 1315 (9th Cir. 1983)).  The only true final order in a bankruptcy proceeding occurs when the order closing the case is filed.  11 U.S.C. § 350; *see also In re Mason*, 709 F.2d 1313, 1316 (9th Cir. 1983).  The Ninth Circuit aptly explained that "an order for relief can be viewed as merely a decision that a bankruptcy case can continue." *In re Mason*, 709 F.2d at 1316.

The effect of the Bankruptcy Court's Order for Relief from Stay does not equate to a final decision on the merits of a discrete issue, but merely grants the *right* to assert a claim in another court.  Creatore's argument that failure to apply *res judicata* "would permit the debtor to argue the applicability of the automatic stay twice, once before the bankruptcy court and again before the court in which the creditor pursues his or her claims" is mistaken, given that the underlying matter–whether defamation or false light occurred–has yet to be decided.  Therefore, Creatore's failure to satisfy the first element renders *res judicata* inapplicable and additional analysis unnecessary as each element must be met.

### B.  Neither the Bankruptcy Code's Automatic Stay Nor the Thirty-Day Extension Applies

#### 1. Interval or "Gap" Time Period

The timing of the debtor's [GO&B's] conduct giving rise to the cause of action ultimately determines whether the claim is "pre-petition" or "post-petition." *In re Marshall*, 302

04:09-CV-2926

**B.R. 711, 715 (Bankr. D. Kan. 2003)**. The determination is significant because "pre-petition causes of action are part of the bankruptcy [proceedings] and post-petition causes of action are not." *In re Witko*, **374 F.3d 1040, 1042-43 (11th Cir. 2004)**. At the outset, the Court must determine whether Creatore's claims are pre-petition, requiring the application of the Bankruptcy Code.

Section 502(f) of the Bankruptcy Code focuses on the interval between filing an involuntary petition and the order for relief:

> In an involuntary case, a claim arising in the *ordinary course of the debtor's business* or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee and the order for relief shall be determined as of the date such claim arises, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

The following timeline is helpful:

- On April 23, 2003, Alfa Laval and two creditors from GO&B filed involuntary Chapter 7 bankruptcy petition against GO&B. **ECF No. 1 at 2**.

- On May 1, 2003, Beatrice was appointed the Interim Trustee for GO&B. **ECF No. 1 at 2**. (Earliest opportunity for the interval period to begin).

- On May 26, 2003, the GO&B employee sent the alleged defamatory email to Beatrice. **ECF No. 1 at 2**.

- On June 16, 2003, the Bankruptcy Court (Judge Bohda) issued an Order for Relief. **ECF No. 8 at 8**.

Creatore asserts that he is a "gap creditor" and that his claims are "pre-petition" because the allegations accrued from an email sent during the interval "gap period," after the

-10-

04:09-CV-2926

commencement of the bankruptcy matter and before the appointment of the Trustee, Beatrice.[7] **ECF Nos. 8-9**.

There is no dispute that Creatore's claims temporally arose during the interval period.[8] Nevertheless, his claims are not "pre-petition" because the claims do not fall within the *ordinary course of business*. An alleged defamatory email, a tortious act prompted by filing involuntary bankruptcy, is never in relation to the debtor's ordinary course of business. *See **In re Manufacturer's Supply Co., 132 B.R. 127, (Bankr. N.D. Ohio 1991)*** (discussing debt to pay for legal services required by bankruptcy filing is not a debt arising in the ordinary course of a debtor's business); *see also **In re Eagle–Picher Industries, Inc., 447 F.3d 461, 464 (6th Cir. 2006)*** ("[T]he court invoked Black's Law Dictionary's definition of 'ordinary course of business'–'any matter which transpires as a matter of daily custom in business'. . . ."). Therefore, § 502(f) does not apply, and Creatore's claims are, by default, treated as post-petition.

### 2. Actions on Post-Petition Claims are Not Stayed

The automatic stay of § 362(a) operates to enjoin most claims to collect pre-petition debt against the debtor. ***In re Bunting Bearings*, 302 B.R. 210, 213 (N.D. Ohio 2003)**. Section

---

[7] Interestingly, Creatore does not provide the date on which Trustee Beatrice was permanently appointed. For the sake of his argument, the undersigned assumes that the Trustee's permanent appointment was on a date earlier than the date on which Bankruptcy Judge Bodoh issued the Order for Relief.

[8] This calculation possibly enlarges the gap interval by using as the cutoff date the issuance of Bankruptcy Judge Bohda's Order for Relief from Stay, rather than the earlier appointment of the Trustee date.

-11-

04:09-CV-2926

362(a) provides that the purpose of an automatic stay is to preserve the status quo of the bankruptcy estate. **11 U.S.C. § 362**. Moreover, an automatic stay becomes operative when a petition is filed under Section 303, involuntary bankruptcy, for example. Most importantly, causes of action that are post-petition are not stayed. **11 U.S.C. § 362.03(3)(c)**; *see also* ***Aracich v. Whelling-Pittsburgh Steel Corp.*, 1992 WL 92733 at \*1 (6th Cir. 1992)** (explaining § 362 does not apply to post-petition). As previously determined, Creatore's alleged defamation and false light claims are deemed post-petition, and thus not preserved by the automatic stay.

### 3. Post-Petition Claims are Not Tolled

Section 108(c) extends time periods for commencing or continuing civil actions that are stayed by § 362 of the Bankruptcy Code. **11 U.S.C. § 362**. It provides that if an action on a claim against the debtor in a court other than a bankruptcy court is *stayed* due to the bankruptcy case, then the expired statute of limitations for commencing and continuing the action is extended for thirty days after notice of termination of the stay. **11 U.S.C. § 362**. On June 16, 2003, the Bankruptcy Court terminated the stay by granting the Order for Relief from Stay. **ECF Nos. 8 at 8**. On December 17, 2009, GO&B received notice of the termination of stay. **ECF No. 1 at 4**; *see also **Schumacher v. Worcester*, 55 Cal. App. 4th 376, 380 (1997)** (explaining the thirty day time period begins to run when the debtor received notice of the termination of stay). Creatore contends that § 108(c) applies because he filed his cause of action on December 17, 2009, within the thirty day time period. **ECF No. 8 at 14**.

The Sixth Circuit has held that § 108(c) preserves or extends a statute of limitations that would expire while a stay is in effect. ***In re Klingshirn*, 209 B.R. 698, 702 (B.A.P. 6th Cir.**

04:09-CV-2926

**1997)**. In the instant matter, § 108 does not provide relief to Creatore's post-petition claims because § 108(c) "tolls the statute of limitations only on *pre-petition* claims against the debtor." *Id*. (emphasis added); *see* **Heck-Dance v. Cardona-Jimenez, 102 Fed.Appx. 171, 172 (1st Cir. 2004)** (*citing* **Matter of Phillip, 948 F.2d 985, 987 (5th Cir. 1991)** (finding causes of action acquired post-petition are not protected by § 108); *see also* **Aracich 1992 WL 92733 at \*1**. Therefore, Creatore's claims are not tolled by § 108(c).

### C. The Ohio Revised Code's Statutes of Limitations Bars the Complaint

#### 1. Defamation Claim

Under Ohio law,[9] libel is defined as "a false written publication made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession."[10] **Jackson v. Columbus, 117 Ohio St. 3d 328, 331 (2008)** (*citing* **A&B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council, 73 Ohio St.3d 1, 7 (1995)**).

Ohio law requires that "[a]n action for libel . . . shall be commenced within one year after

---

[9] Ohio law applies in matters in which a federal court has jurisdiction *via* diversity of citizenship. **Lawler v. Fireman's Fund Ins. Co., 322 F.3d 900, 900 (6thCir. 2003)** ("Where jurisdiction is based on diversity of citizenship, federal court must apply substantive law of forum state . . . .").

[10] Ohio courts hold that a plaintiff alleging a libel claim must demonstrate the following elements: (1) a false statement of fact was made concerning the plaintiff; (2) the statement was defamatory towards the plaintiff; (3) the statement was written; (4) the statement was published; and (5) in publishing the statement, the defendant acted with the necessary degree of fault. **Gupta v. The Lima News, 139 Ohio App.3d 538, 544 (2000)**.

-13-

04:09-CV-2926

the cause of action accrued . . . ." **O.R.C. § 2305.11(a)**. The statute of limitations applicable to libel claims begins to run on the date the alleged defamatory remarks are published, not the date a plaintiff learns of the remarks. *Freidler v. Equitable Life Assur. Soc'y of U.S., 86 F.Appx 50, 53 (6th Cir. 2003)*; *see Slough v. Telb, 644 F.Supp. 2d. 978, 996 (N.D. Ohio 2009)* ("Under Ohio law, the statute of limitations begins to run on the date the defamatory remarks are spoken or published, not on the date a Plaintiff learns of the remarks."); *see also Gentry v. The Rental Network, 636 F.Supp. 2d 614, (N.D. Ohio 2009)* (holding plaintiff's libel claim was time barred because it was filed seven years after the fact).

At the threshold, Creatore does not dispute the following facts: (1) the defamation claim stems from an email sent in May 2003, by a GO&B employee to GO&B's Bankruptcy Trustee; and (2) Creator filed the instant action in December of 2009, approximately six years after the email was transmitted, and at least four years after he became aware of the email's existence. **ECF No. 8 at 3**. In addition to the undisputed facts, Creatore has not alleged that defamatory statements were made within one year of filing this suit. *See Viergutz v. Lucent Technologies, Inc., 2010 WL 1640936 *4 (6th Cir. 2010)* (holding plaintiff's claim is time-barred because he did not file the action within Ohio's one year statute of limitations period, nor did he allege that defamatory statements were made within one year prior to filing suit).

### 2. False Light, Invasion of Privacy Claim[11]

Under Ohio law, one is liable for false light invasion of privacy if: "(a) the false light in

---

[11] "In Ohio, the tort invasion of privacy includes four distinct causes of action [including] publicity that places plaintiff in false light . . . ." *Yoder v. Ingersoll-Rand Co., 172 F.3d 51, 51 (6th Cir. 1998)*.

-14-

04:09-CV-2926

which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Welling v. Weinfeld*, 113 Ohio St.3d 464, 472 (2007); *see also Patrick v. Cleveland Scene Pub. LLC*, 582 F.Supp.2d 939, 583-84 (N.D. Ohio 2008).  A false light claim is difficult to prove because

> [t]he "publicized" statement must be untrue and it applies only when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity . . . . The plaintiff's privacy is not invaded . . . when the unimportant false statements are made, even when they are made deliberately. It is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position, that there is a cause of action for invasion of privacy.

*Welling*, 113 Ohio St.3d 464, 472.  Notably, "publicized" or "publicity" is distinguishable from "publication" in that "publicity . . . means that the matter is made public [] by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* at 471.

A cause of action for invasion of privacy does not have a specific statute of limitations. The Supreme Court of Ohio, however, has ruled that the statute of limitations is based on the "true nature or subject matter of the acts giving rise to the complaint, rather than the form in which the action is pleaded." *Hidey v. Ohio State Highway Patrol*, 116 Ohio App.3d 744, 747 (1996) (*citing Doe v. First United Methodist Church*, 68 Ohio St.3d 531, 536 (1994)).

In the instant matter, the acts giving rise to the complaint arose out of an email from a GO&B employee communicating defamatory information concerning Creatore to the bankruptcy Trustee, and the defamatory information allegedly placed Creatore before the public in a false

-15-

04:09-CV-2926

light. ECF No. 1 at 5. If Creatore's false light invasion of privacy claim is considered an offshoot of the law of libel, then it is governed and time barred by the one year statute of limitations. *See* O.R.C. § 2305.11(a).

One District Court, however, found that Ohio law provides a four year statute of limitations. *Morgan v. Hustler Magazine, Inc.*, 653 F.Supp. 711, 716 (N.D. Ohio 1987) ("[T]he statute of limitations for invasion of privacy is four years, Ohio Rev. Code Ann. § 2305.09(D)."). Despite GO&B's anticipation, Creatore has not argued that the Ohio Revised Code four year statute of limitation applies. ECF No. 7 at 14 n.25. Nevertheless, the Court has reviewed that possibility and found that, even assuming a four year statute applies, Creatore's claim is still time-barred because the four year statute of limitations would have expired on May 27, 2007, over two years prior to the filing of Creatore's instant complaint.

**3. Equitable Estoppel Does Not Apply**

The doctrine of "equitable estoppel tolls a statute of limitations if a defendant actively prevents the plaintiff from timely filing his or her claims." *Cunningham v. Interlake S.S. Co.*, 567 F.3d 758, 760 (6th Cir. 2009). "Application of equitable estoppel 'should be premised on a defendant's improper conduct as well as a plaintiff's actual and reasonable reliance thereon.'" *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 891 (6th Cir. 2004) (*citing Hentosh v. Herman M. Finch Univ.*, 167 F.3d 1170, 1174 (7th Cir. 1999)).

Pursuant to the equitable estoppel doctrine, Creatore claims that GO&B should be prohibited from using the defamation statute of limitations as a defense. ECF No. 8 at 14. Creatore specifically alleges that GO&B's bankruptcy Trustee, Beatrice, purposely withheld the

-16-

04:09-CV-2926

defamatory email from production in response to a subpoena in 2004, and instead produced the email in 2005 in response to a different subpoena. **ECF No. 8 at 14-15**. Creatore imputes the bankruptcy Trustee's actions to GO&B, and asserts that the bankruptcy Trustee's silence prevented him from discovering the defamatory email in order to timely pursue his claims against GO&B. **ECF No. 8 at 15**.

Creatore's argument, however, ignores a fundamental difference between the Trustee and debtor. At the outset, "trustees do not represent the debtor nor do they owe the debtor any fiduciary obligation." *In re Bashour*, **124 B.R. at 53**. In this respect, the Trustee and the debtor are " neither the same entity nor alter egos of each other." *In re Buckeye Countrymark, Inc.*, **251 B.R. 835, 840 (S.D. Ohio 2000)**. In the instant matter, Beatrice's actions or inactions cannot be imputed to GO&B because (1) Beatrice did not represent GO&B when he failed to timely produce the alleged defamatory email in response to the first subpoena;[12] and (2) Beatrice and GO&B are separate entities and not alter egos of each other. As such, the Court has no basis upon which to employ the doctrine of equitable estoppel in this matter, and the Court may properly dismiss the defamation claim.

## IV. Conclusion

For reasons provided above, the Court grants Girton, Oakes & Burger Inc.'s Motion to Dismiss (**ECF No. 7**). Because this matter is being dismissed due to Creatore filing his

---

[12] It is important to note that Creatore did not initiate this lawsuit at the time he discovered the alleged defamatory email in 2005, but rather waited and brought suit in 2009. Creatore's delay undermines his argument that the bankruptcy Trustee's silence prevented him from timely pursuing his claims.

04:09-CV-2926

complaint outside of the **O.R.C. § 2305.11(a)** statute of limitations, the Court will not address GO&B's other arguments for dismissal.

    The case is dismissed in its entirety.


    IT IS SO ORDERED.


September 10, 2010                              /s/ Benita Y. Pearson
Date                                            United States Magistrate Judge